Good morning, Your Honor. If I could, I'd like to reserve two minutes for rebuttal argument. May it please the Court, my name is Amos Lawrence and I represent the petitioner, Homogeneous Ramos, in this case. Past persecution and well-founded fear of future persecution provide distinct avenues, distinct and separate avenues for relief. Now, I believe we present a persuasive argument that my client was persecuted in the past by the and less defensible argument that he failed to establish a well-founded fear of future persecution. I believe this aspect of the BIA's decision is less defensible because it's not based in its own reason analysis of this issue, but instead upon its express adoption of the petition advocated by the DHS. And the DHS's position was inherently flawed in part because it's interest in Mr. Ramos once he had provided electronics equipment to them, and in part because it failed to acknowledge that the NPA thereafter sought his whereabouts and threatened his safety after he had done so. If, in fact, the NPA's actual motivation for kidnapping and threatening my client was to obtain electronics equipment, it might indeed be reasonable to assume as the BIA did that he had fulfilled this obligation when he did so. But the NPA's actual motivation, which established unequivocally by the record for kidnapping and threatening his life, was to compel him to serve as an informant by providing information about troop movements and strengths at a local military camp, which he had unique access to as a result of the fact that he had friends stationed at that camp who he would visit. Contrary to the BIA's position, which was the DHS's position, the NPA's primary objective to induce Mr. Ramos to be an informant against the military was certainly not satisfied upon the fulfillment of his independent promise to obtain electronics equipment, which frankly was an afterthought of his captors during his night of captivity. And if this were not apparent at the time they released him, it certainly was when they thereafter sought his whereabouts and told his parents' tenants that if he did not return, that he could not return in the future. Mr. Lawrence, he spent some additional five months in the Philippines before he came to the United States, isn't that correct? That's my recollection. I think he did it, I think the one time he said he went to Manila, but he avoided the area where he had encountered the NPA in the past, namely his parents' home. If he was able to spend an additional five months unmolested in Manila, then what makes us think then that he's going to be subject to future persecution? Well, we've had many cases, and one in particular from the circuit from the Philippines, Lim, the INS, where the petitioner remained in the Philippines for six years after appearing on an NPA death list. And there are other cases like that, but that's one that initially comes to mind. Appearing on a death list and being sought because you might be useful to be an informant on troop movements. And if he's moved to Manila, he's in another area where he's not going to be able to comment on the troop movements they're interested in, is he? Well, that's probably the case, but that doesn't mean they didn't, they originally threatened to kill him. They'd killed three of his friends who had been abducted by them. And the implication is, if he were going to kill you? Well, they threatened to kill him when they kidnapped him. If what? Well, I think the implication was they threatened to kill him if he didn't come with them. But given the State Department's acknowledgement that they do commit political killings, and they had threatened him, and they did kill three of his friends, unless this is considered an idle threat when he didn't fulfill his obligation and apparent implied promise to provide information as an informant, I think it's reasonable to assume that there's a really, at very least, a reasonable possibility that they would implement that threat in the future. Hence, the BIA's and the DHS's position was based on a fundamental mischaracterization of the NPA's motivation for attempting to recruit him and an actual misrepresentation of the record when it maintained that the NPA never threatened Mr. Ramos after his release. While responded in contrast, the DHS and the BIA has acknowledged its own brief that a general undifferentiated threat was made. This was not the position adopted by the BIA, and even if it had been, as I've previously acknowledged, the respondent's attempt to minimize the gravity of this threat is belied by independent evidence that they threatened to kill him, that they killed three of his friends whom they abducted, and the State Department's report establishes that they commit political killings. Contrary to the DHS's so-called position, therefore, the record in this case, in our estimation, established unequivocally that the NPA not only had an enduring interest in Mr. Ramos, but they also had the capacity and the inclination to persecute him if he did not accede to their demands to serve as their informant. How would you define the precise legal question that is before this panel today in this case? How would you define that question? Well, let me preface that by saying one of the problems of the BIA's decision in adopting the DHS's position is a little bit ambiguous, and it certainly implies from my point of view that they were making a conclusion that it was factually insufficient, that they didn't have an enduring interest. It's a little ambiguous of whether they also questioned whether there was a legal grounds or a statutory grounds for this so-called threat, but our position, if you could assume that it was based on that argument also made by the DHS, even though they don't explicitly say so, the fact that they think that their motivation was to obtain electronics equipment as opposed to taking action against his friends and the military. I'm beginning to think that maybe you find some difficulties stating the precise legal question that's before the panel. That's what we're going to have to respond to. Well, I think the legal question is, is the BIA correct in its finding that there's insufficient evidence that the NPA had an enduring interest in Mr. Ramos once he provided them with electronics equipment? Thank you. So in conclusion, whether this panel agrees with our position that my client established past persecution, I believe the record establishes at the very least that he met his burden of establishing a reasonable fear of future persecution based on his implied political opinion. What evidence do you have that the NPA is still looking for him? Well, it was the the evidence was that they came looking for him after he left off the electronics equipment and then told his student if he didn't come back then, he could never come back. So once he left the Philippines, I don't believe there's any apparent reason for them to continue to ask for his whereabouts, but that is the final episode. Okay, so just just help me understand the chronology. So when he goes to Manila for five months, how many times does the NPA approach his family during that time? Once. Once. And at what point in the five months did that occur, do you know? I don't know precisely, Judge. And it wasn't his family who was approached, was it? I beg your pardon? It was not his family that was approached. Yeah, according to his testimony, it's his family's tenant. It was a tenant. Right. He said if he doesn't come back now, he can't come back. Yes, I believe that's sort of a pretty unambiguous threat that if you don't come back now, when you do come back, we're going to kill you. Well, that's unambiguous. That's interesting. Well, you might say you wish to... I'll qualify that. I believe that's the only reasonable inference that one can draw from that evidence. Thank you, Your Honor. Okay, thank you. May it please the Court, Christina Paras-Gondola for the Attorney General. I just want to start by responding to Judge Ferris's question. What is the precise legal question before the Court? And that is, does substantial evidence support the Board's findings? In other words, does the record compel a finding to the contrary of the Board's on, I think, three issues? Number one, did Mr. Ramos suffer past persecution in the Philippines? Secondly, if he did, was it on account of a protected ground? Here, the Board found in the negative for both of those issues. And the record supports that. It doesn't compel a contrary finding. Now, if Mr. Ramos didn't show past persecution, he still could qualify for asylum by showing a well-founded fear of future persecution. And here again, the Board found that he didn't show that. And, you know, the record, it's his burden to show that he is eligible and that he has suffered the past persecution and the well-founded fear. He has not done that. And the Board cited to this Court's earlier precedent showing in similar circumstances that this burden has not been met. I would add that these proceedings had been remanded to the immigration judge, and these were very protracted proceedings. I'm sure you're familiar with the record, but Mr. Ramos did not show asylum until 1993. And by the time there was a merits hearing on his asylum claim, it was 2005. And he had many opportunities to submit additional evidence about the NPA. And, you know, from the record, we can see from the 1998 profile of asylum claims, it says that the NPA has a waning presence in the Philippines. It had a significant presence in less than 2% of the country. And also that generally people who are threatened by the NPA are able to relocate within the Philippines. In closing, I think that the, well, first of all, this Court must review the Board's decision for substantial evidence. Mr. Ramos has not shown that the record compels a finding to the contrary of the Board's. And we ask the Court to deny the record compels reversal, then the proper remedy would be to remand the case to the Board for further findings. If there are no further questions, the government rests. Okay. Thank you, counsel. Mr. Lawrence, I think you have about a minute and a half or so. To reiterate, our position is substantial evidence does not support the Board's determination that the NPA's objective was to obtain electronic equipment, and it does not support the BIA's implied finding based on its adoption of the DHS's position that he was never threatened again after that. And finally, this Court has previously presented with this argument numerous times that an applicant who feared the NPA should not fear it now due to the diminished strength of the NPA in subsequent years. And among other cases, Lim v. INS, Briones v. INS, and Borja v. INS, this Court has consistently rejected that conclusion that an applicant no longer had a reasonable fear merely because the capacity of the NPA to carry out such threats had diminished. Thank you. Okay. Thank you. Thank counsel for the argument.
judges: Farris, Fernandez, Bybee